UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PEDRO LEON, ET AL.** | DOCKET NUMBER: 15-6301 |
| VERSUS | SECTION: J (BARBIER) |
| **DIVERSIFIED CONCRETE, LLC, ET AL.** | MAGISTRATE: 5 (NORTH) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION OF THE PLAINTIFFS' MOTION FOR CONDITIONAL CLASS CERTIFICATION, JUDICIAL NOTICE, AND FOR DISCLOSURE OF THE NAMES AND ADDRESSES OF THE POTENTIAL OPT-IN PLAINTIFFS [R. DOC. 10]**

The defendants, Diversified Concrete, LLC, Ryan Rodgers, and Bradley Rogers, through undersigned counsel, respectfully file this memorandum to oppose the Plaintiffs' Motion for Conditional Class Certification, Judicial Notice, and for Disclosure of the Names and Addresses of the Potential Opt-in Plaintiffs [R. Doc. 10] pending before the Court. The plaintiff has not shown that Pedro Leon is the right person or that Diversified Concrete, LLC, is the right defendant for this claim.

STATEMENT OF THE CASE

As its name suggests, Diversified Concrete, LLC ("Diversified"), is Louisiana construction company that builds things made from concrete, such as sidewalks and driveways. It hires contract laborers, like Mr. Leon, to set the forms, place rebar, and then break the forms down after another company pours the concrete. The LLC has two members, Ryan Rogers and Bradley Rogers; one supervisor, Juan Roque, and one secretary, Kelli Jakes.

Diversified pays these contract laborers by the hour. The field supervisor, Mr. Roque contemporaneously keeps track of the contract labors' hours on handwritten notebooks. The supervisor forward this to Bradley Rogers for review, who would then forward it to Kelli Jakes for

computation and payment, using computer Excel spreadsheets and the QuickBooks accounting software, also entered and prepared contemporaneously.

Mr. Leon was a contract laborer that made $13.00 per hour.[1] Mr. Roque's and Ms. Jakes records and computer data show that Mr. Leon work for five months in 2015. These records show that Mr. Leon worked 40 hours or less in every week, except for two. He worked 1.5 extra hours in the week of March 23-27 at a hotel and 1 extra hour in the week of June 1-5 at the New Orleans Lakefront seawall.

Defendants dispute that Mr. Leon was entitled to overtime pay under the FLSA. But even if he was, the most that the plaintiff would be due is 2.5 times the unpaid $6.50, which is $16.25, plus that amount in liquidated damages. However, during his employment and before suit, Diversified gave Mr. Leon two checks, $200.00 each, on May 1 and again on June 6, in addition to those for his hourly pay. Even assuming that the plaintiff was a covered employee under FLSA, after offsetting for these extra payments, he actually owes the defendant $367.50.

Moreover, the FLSA did not cover Mr. Leon. None of the concrete things that Mr. Leon or Diversified ever created moved across state lines. Diversified does not cross Louisiana state lines for work. Sidewalks and driveways are not "goods for commerce." The two places Mr. Leon worked his additional 2.5 hours are not facilities that produce goods for interstate commerce.

LAW AND ARGUMENT

Mr. Leon desires to bring a class action on behalf of others similar situated under 29 U.S.C § 216(b). His motion seeks the Court to initiate the "notice stage" discussed in *Mooney v. Aramco*

---

[1] Ms. Jakes applied a 0.0917 deduction to account for workers compensation premiums.

*Services Co.*[2] where notices are sent to the putative members of the class to give them an opportunity to opt-in. To prevail, Mr. Leon must provide substantial allegations that he and the putative class members are together "the victims" of the defendants' single illegal decision, policy, or plan.[3] The plaintiff in the present case cannot show that he is a victim of anything, much less one of a group of victims.

Although the Mr. Leon has a less stringent standard at this stage, the Court is not duty bound to accept plaintiff's declaration without question as in a summary judgment motion.[4] Mr. Leon swears that, on average, he fifty hours per week for Diversified.[5] He swears that he never received any "extra" or "overtime" compensation.[6] He swears that at least one of his co-workers did not get full overtime.[7] The plaintiff does not have a single business record, other document, or corroborating witness to support these assertions. Mr. Leon does not even give the name of the one co-worker who he also claims to have not gotten their overtime.

Directly contradicting Mr. Leon are the sworn declarations of Mr. Roque and Ms. Jakes, as well as their contemporaneously made records of Mr. Leon's hours and pay. Contrary to his declaration, the records show that the plaintiff only worked more than 40 hours in two weeks and then only for a combined 2.5 hours. His actually only averaged about 31 hours per week, nowhere near 50. Mr. Roque and Ms. Jakes, who are not parties to this action, are the persons who

---

[2] *Mooney v. Aramco Services Co.*, 54 F.3d 1207 (C.A. 5 (Tex.), 1995).
[3] *Donohue v. Francis Srvs., Inc.*, No. Civ. A. 04-170, 2004 WL 1161366, at *3 (E.D. La. May, 2004) (Barbier, J) (quoting *Mooney*).
[4] FRCP. 26.
[5] Declaration of Pedro Leon, ¶10. [R. Doc. 1-3].
[6] *Id*, ¶11.
[7] *Id*.

documented and computed Mr. Leon's time and pay, not any of the individual defendants. Unlike Mr. Leon, they have no personal reason to exaggerate the truth.

More importantly, Mr. Roque and Ms. Jakes are the authors of the time records and spreadsheets. Accordingly, the Court would have to believe that these non-parties went as far as to fabricate documents to help their bosses defeat the plaintiff's claim.

Mr. Leon is further impeached and his claim eliminated with the two additional $200.00 checks he received when he worked for Diversified. The existence of these documents show that the plaintiff's assertion that he never received anything "extra" is false. Further, this superfluous $400.00 Diversified gave to Mr. Leon compensate him far more than his 2.5 hours of overtime would entitled him, and even liquidated damages, assuming he could show appropriate status under FLSA.

The plaintiff cannot meet his burden that had such status, either as an individual who "regularly and directly participates in the actual movement of persons or things in interstate commerce" or that he was "employed in an enterprise engaged in commerce or in the production of goods for commerce."[8]

All Diversified does is concrete construction work. The Department of Labor provides guidance as to when a worker involved in construction work may be entitled to FLSA coverage in 29 C.F.R., Pt. 776, Subpart B. Construction Industry. Some of the important provisions are:

29 CFR 776.23

**(a) In general.** The same principles for determining coverage under the Fair Labor Standards Act generally apply to employees in the building and construction industry. As in other situations, it is the employee's activities rather than the

---

[8] *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 18 Wage & Hour Cas.2d (BNA) 577, 23 Fla. L. Weekly Fed. C 567 (11th Cir., 2011), citing, *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003), citing, *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).

employer's business which is the important consideration, and it is immaterial if the employer is an independent contractor who performs the construction work for or on behalf of a firm which is engaged in interstate commerce or in the production of goods for such commerce.[9]

**(b) On both covered and non-covered work**. If the employee is engaged in both covered and non-covered work during the workweek he is entitled to the benefits of the Act for the entire week regardless of the amount of covered activities which are involved. The covered activities must, however, be regular or recurring rather than isolated, sporadic or occasional.[10]

**(c) On covered construction projects**. All employees who are employed in connection with construction work which is closely or intimately related to the functioning of existing instrumentalities and channels of interstate commerce or facilities for the production of goods for such commerce are within the scope of the Act. Closely or intimately related construction work includes the maintenance, repair, reconstruction, redesigning, improvement, replacement, enlargement or extension of a covered facility.[11] If the construction project is subject to the Act, all employees who participate in the integrated effort are covered, including not only those who are engaged in work at the site of the construction such as mechanics, laborers, handymen, truckdrivers, watchmen, guards, timekeepers, inspectors, checkers, surveyors, payroll workers, and repair men, but also office, clerical, bookkeeping, auditing, promotional, drafting, engineering, custodial and stock room employees.[12]

**(d) On non-covered construction projects.**

(1) A construction project maybe purely local and, therefore, not covered, but some individual employees may nonetheless be covered on independent ground by reason of their interstate activities. Under the principle that coverage depends upon the particular activities of the employee and not on the nature of the business of the employer, individual employees engaged in interstate activities are covered even though their activities may be performed in connection with a non-covered construction project. Thus, the Act is applicable to employees who are regularly engaged in ordering or procuring materials and

---

[9] Citing, *Mitchell v. Joyce Agency*, 348 U.S. 945, affirming 110 F. Supp. 918*; Fleming v. Sondeck*, 132 F. (2d) 77 (C.A. 5), certiorari denied 318 U.S. 772; *Kirschbaum v. Walling*, ante; *Walling v. McCrady Construction Co.*, 156 F. (2d) 932. certiorari denied 329 U.S. 785; *Mitchell v. Brown Engineering Co.*, 224 F. (2d) 359 (C.A. 8), certiorari denied 350 U.S. 875; *Chambers Construction Co. and L. H. Chambers v. Mitchell*, decided June 5, 1965 (C.A. 8).
[10] Citing, General Coverage Bulletin, §§ 776.2 and 776.4
[11] Citing, *Walling v. McCrady Const. Co.*, 156 F. (2d) 932, certiorari denied 329 U.S. 785; *Chambers Construction Co. and L. H. Chambers v. Mitchell*, decided June 5, 1956 (C.A. 8); *Tobin v. Pennington-Winter Const. Co.* ante; *Mitchell v. Vollmer & Co.*, ante.
[12] Citing, *Mitchell v. Brown Engineering Co.*, ante; *Chambers Construction Co. and L. H. Chambers v. Mitchell*, ante; *Ritch v. Puget Sound Bridge & Dredging Co.*, 156 F. (2d) 334 (C.A. 9).

> equipment from outside the State or receiving, unloading, checking, watching or guarding such goods while they are still in transit. For example, laborers on a non-covered construction project who regularly unload materials and equipment from vehicles or railroad cars which are transporting such articles from other States are performing covered work.[13]
>
> (2) Similarly, employees who regularly use instrumentalities of commerce, such as the telephone, telegraph and mails for interstate communication are within the scope of the Act, as are employees who are regularly engaged in preparing, handling, or otherwise working on goods which will be sent to other States. This includes the preparation of plans, orders, estimates, accounts, reports and letters for interstate transmittal.

Mr. Leon's activities involved participating in building concrete objects that cannot move across state lines. The things helped produced are not "goods involved in interstate commerce." The plaintiff never left Louisiana working for Diversified, so his work itself did not involve interstate commerce. He never even worked with materials that were sold across state lines. All Mr. Leon did was perform services, wholly within Louisiana. None of Diversified's work is across state lines and none of the things it ever builds cross state lines.

The plaintiff's two instances when he worked more than 40 hours were at a hotel and at the lakefront seawall. Neither of which are listed in 29 CFR 776.29, *Instrumentalities and channels of interstate commerce*, and neither produce goods. 29 C.F.R 776.26 specifically states that "the erection, maintenance or repair of dwellings, apartments, **hotels**, churches and schools are not covered projects."[14] The seawall does not produce goods, does not cross state lines, and is not involved in commerce whatsoever. Therefore, Mr. Leon's work was not closely or intimately related to the function of existing instrumentalities and channels of interstate commerce or facilities for the production of goods for such commerce.

---

[13] Citing, *Clyde v. Broderick*, 144 F. (2d) 348 (C.A. 10); *Durnil v. J. E. Dunn Construction Co.*, 186 F (2d) 27 (C.A. 8), *Donahue v. George A. Fuller Co.*, 104 F. Supp. 145; Cf. *Mitchell v. Royal Baking Co.*, 219 F. (2d) 532 (C.A. 5).
[14] Citing, Cf. § 776.18(b). [Emphasis supplied].

Mr. Leon was not covered by FLSA and, even if he was, Diversified actually overpaid him for the paltry 2.5 hours of overtime. His allegations that he is the "victim" of the defendants' actions along with others are not substantiated. The plaintiff has not met his burden and the Court should deny his motion.

Even if the defendants did somehow victimize Mr. Leon, he was not typical of the class that he is trying to notify. Mr. Leon worked for Diversified for five months, but he wants to represent a class of workers who worked for three years. If the Court is inclined to grant plaintiff's motion the notified class should be limited to Mr. Leon's work span from February through July of 2015. Additionally, the 90 day opt-in period suggested in the notice is excessive. A 45-day period would be more reasonable.[15]

## CONCLUSION

Rather than concern itself with the length of the opt-in period, the Court should deny Mr. Leon's motion. The overwhelming documentary evidence from non-party witnesses shows that he only worked 2.5 hours of overtime and was paid 25 times more than he was due, even if he were a covered employee. The plaintiff was not a victim and therefore cannot be the victim together with other putative class members. The Court should deny Mr. Leon's motion.

                Respectfully Submitted:

                Attorneys for Diversified Concrete, LLC,
                Ryan Rodgers, and Bradley Rogers,
                Defendants

                _____
                JOHN A. VENEZIA (#23963)
                johnvenezia@venezialaw.net

---

[15] See, *Marshall v. Louisiana*, C.A. 15-1128 "G"(2) (E.D. La., 1/22/2016).

        JULIE O'SHESKY (#36245)
        julieoshesky@venezialaw.net
        757 St. Charles Ave., Suite 302
        New Orleans, LA 70130
        (504) 486-3910 voice
        (504) 486-3913 fax

**CERTIFICATE OF SERVICE**

    I certify that I will cause a copy of the foregoing to be sent to all counsel of record via notices through the Court's ECF/CM system.

April 12, 2016                                   _____
                                                John A. Venezia